UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JUAN DAVID QUICHIMBO SUMBA, MIRIAN XIMENA ABARCA TIXE, and C.M.Q.A. (minor),<br><br>　　　　　　　　Petitioners,<br><br>v.<br><br>KRISTI NOEM, U.S. Secretary of Homeland Security; [NAME UNKNOWN AT TIME OF FILING], Field Office Director; MICHAEL KROL, HSI New England Special Agent in Charge; and TODD LYONS, Acting Director of U.S. Immigration and Customs Enforcement,<br><br>　　　　　　　　Respondents | Case No. 25-13625<br><br>**PETITION FOR WRIT OF HABEAS CORPUS** |

## INTRODUCTION

Petitioners—Juan David Quichimbo Sumba ("Mr. Quichimbo Sumba"), Mirian Ximena Abarca Tixe ("Mirian"), and 7-year-old child (hereinafter referred to collectively as "Petitioners")—file this emergency habeas petition because ICE is attempting to remove them on December 2, 2025, pursuant to a handwritten sticky-note "departure order" threatening punitive family detention if they do not comply. This action violates: The Fifth Amendment, The Administrative Procedure Act, 8 C.F.R. §§ 241.4, 241.5, Binding DHS and ICE Trafficking Victims Protection Act (TVPA) policies, Petitioners' statutory rights as T-Visa applicants awaiting adjudication by USCIS since August 2024, Established precedent of the District of Massachusetts and First Circuit regarding removal before adjudication of pending legal processes.

1

ICE issued this directive without any formal document—not on Form I-220A, I-220B, or any other authorized instrument—but on a yellow sticky note accompanied by threats of retaliation. ICE has conducted no "deconfliction" process, which its own policies expressly require before taking immigration enforcement action against victims of severe labor trafficking.

Petitioners filed an emergency motion to stay removal with the BIA on November 20, 2025, which remains pending. ICE is attempting to pre-empt the BIA's ruling, echoing misconduct previously condemned by this Court in *Devitri v. Cronen*, 289 F. SUPP. 3d 287 (D. MASS. 2018), *Jiminez V. Nielson*, 334 F. SUPP. 3d 370 (D. MASS. 2018), and *Savino v. Souza*, 459 F. Supp 3d 317 (D. MASS 2020).

Petitioners request a writ of habeas corpus, stay of removal, and injunctive relief restraining ICE from removing, detaining, or transferring them pending resolution of this matter.

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction under 28 U.S.C. § 2241 (habeas corpus) and 28 U.S.C. § 1331 (federal question).

2. The Court also has jurisdiction under the APA, 5 U.S.C. § 701 et seq., and the Constitution.

3. ICE's coercive GPS monitoring, threats of detention, and unlawful departure directive constitute "custody" under *Jones v. Cunningham*, 371 U.S. 236, 238-43 (1963).

4. Venue lies in the District of Massachusetts because Petitioners reside here and all relevant events occurred within this district. Petitioners are supervised and threatened with detention here.

## PARTIES

5. The Petitioners, Juan David Quichimbo Sumba ("Mr. Quichimbo Sumba"), Mirian Ximena

Abarca Tixe ("Mirian"), and their daughter, C.M.Q.A., are nationals of Ecuador. They reside in Springfield, Massachusetts. All Petitioners have pending relief in front of USCIS in the form of a T Nonimmigrant Visa, which has been pending with USCIS since August 2024.

6. Respondent (NAME UNKNOWN AT TIME OF FILING) is the New England Field Office Director for U.S. Immigration and Customs Enforcement.

7. Respondent Michael Krol is the New England Special Agent in Charge for Homeland Security Investigations for U.S. Immigration and Customs Enforcement.

8. Respondent Todd Lyons is the Acting Director for U.S. Immigration and Customs Enforcement.

9. Respondent Kristi Noem is the U.S. Secretary of Homeland Security.

10. All respondents are named in their official capacities.

## FACTUAL BACKGROUND

7. Petitioners, Juan David Quichimbo Sumba ("Mr. Quichimbo Sumba"), Mirian Ximena Abarca Tixe ("Mirian"), and their daughter, C.M.Q.A. (hereinafter referred to collectively as "Petitioners") are nationals of Ecuador, who entered the United States in June 2021 through the Texas border. They were initially apprehended by Customs and Border Patrol (CBP) and were ultimately released on Recognizance on June 29, 2021. *See* Notice of Custody Determination, June 29, 2021. A second Notice of Custody Determination was issued on July 1, 2021, requiring Mr. Quichimbo Sumba to enroll in Alternatives to Detention (ATD). *See* Notice of Custody Determination, July 1, 2021.

8. Upon release, Mr. Quichimbo Sumba began regular check-ins with Immigration and Customs Enforcement (ICE) at their Framingham, Massachusetts office. He was eventually

3

    fitted with a GPS device as part of the enrollment in ATD, which placed him under the care and custody of ICE.

9. Upon release from CBP custody, Mr. Quichimbo Sumba became a victim of labor trafficking and has subsequently reported his trafficking experience to the Department of Labor and filed for T Nonimmigrant Status. This was received by the United States Citizenship and Immigration Service (USCIS) on August 15, 2024. *See* Receipt Notices. Both Mr. Quichimbo Sumba's wife, Mirian, and his daughter, Camila, are named as derivatives in his application. *See id*.

10. The Petitioners hired Attorney Ernest Atalay of Kew Gardens, New York, to represent them in their removal proceedings shortly after their entry into the United States. Attorney Atalay submitted very little to support the Respondent's timely asylum claim: he submitted the asylum application, a singular three-page declaration from the Lead Respondent, and the Respondents' identification documents. The submission was insufficient to even prove the Respondents' familial ties, as there was no birth certificate included for CMQA, nor a wedding certificate for Juan and Mirian, which is essential to prove derivative asylum status for Mirian and CMQA.

11. On October 14, 2022, Attorney Atalay presented the Respondents' asylum application to the Immigration Court in New York. The Immigration Judge ultimately denied the applications for asylum, withholding of removal, and protection under the Convention Against Torture, and the Respondents reserved their appeal. The appeal was due at the Board of Immigration Appeals on or before November 13, 2022. However, despite the Respondents making the required filing fee payment to Attorney Atalay, he did not file the

notice of appeal until July 21, 2023.[1] In support of his motion to allow late filing, Attorney Atalay provided a declaration, which stated that due in no part to negligence by Juan or his family, Attorney Atalay neglected to file the notice of appeal despite receiving the payment for such. It was not until Juan was informed by Immigration and Customs Enforcement ("ICE") officers in July 2023 at his check-in that Attorney Atalay took action to appeal the denial of their relief application.[2] ICE then fit Juan with a GPS device for supervision due to the removal order. Upon learning of this, Attorney Atalay told Juan that he would file a Motion to Reopen. On this representation, ICE removed the GPS and gave Juan thirty days to speak with his attorney and make a filing. Due to the lack of due diligence or extraordinary circumstances, the Board of Immigration Appeals ("BIA") dismissed the Respondents' appeal as untimely on October 6, 2023.[3] In July 2024, ICE again placed a GPS on Juan, and he has remained fitted with the GPS to this day.

12. On May 3, 2024, Juan and Mirian had a consultation with the undersigned counsel's office. It was then that he disclosed a labor trafficking incident that he had endured in the United States. At the time of consultation, it was unclear whether Juan's Notice to Appear ("NTA") was ever filed with any immigration court, as it did not appear on the Electronic Case and Appeal System to file a Motion to Reopen, the Automated Case Information System, nor in his FOIA. Juan was under the impression, based on previous counsel and ICE, that his notice to appear had not been filed, and only his wife, the Petitioner, and daughter had removal orders.

---

[1] *See* Motion to Allow Late Filing; and, BIA Decision Dismissing Appeal, attached as Exhibit 1
[2] *See* Prior Counsel's Declaration in Support of Motion to Allow Late Filing, attached as Exhibit 1.
[3] *See* BIA Decision, Exhibit 1

13. With the help of undersigned counsel, Juan applied for T Nonimmigrant Status, with Mirian and CMQA as derivatives, and reported the labor trafficking to the Department of Labor to be investigated. On July 25, 2024, undersigned counsel reported labor trafficking on Mr. Quichimbo's behalf to the Department of Labor and thereafter filed his T Visa Nonimmigrant Petition.[4] This petition is still within normal processing times with the United States Citizenship and Immigration Services ("USCIS").

14. The TVPA and ICE policy require that DHS not remove trafficking victims before a mandatory multi-step deconfliction process. No deconfliction has occurred.

15. On June 3, 2025, both Mirian and Juan were called into ICE to report the next morning. This was not normal, as he had his yearly check-ins during July. Undersigned counsel accompanied the Respondents to ICE for their check-in. At the check-in, counsel was informed by an ICE officer that everyone who was called in that day was called in to arrange departure plans. Counsel was told that due to the pending T Visa Application that the Respondents could leave that day without presenting a departure plan, but that proof of the receipts would not "save them" if ICE stopped them in the community.

16. On June 11, 2025, only Juan was required to come into the ICE office the next day. During this check-in, undersigned counsel accompanied Mr. Quichimbo. It was then that Counsel was informed of ICE's desire for the parties to leave the United States within one week. Anticipating that the couple would be detained at this check-in, counsel filed a Habeas Petition, challenging the requirement to depart, as Juan's NTA had never been filed with any immigration court.

---

[4] *See* Report of Labor Trafficking to Department of Labor and I-914 and I-912 Receipts, Exhibit 2.

17. It was later discovered that despite the NTA not appearing in his FOIA or on any court system, it was filed by the Department of Homeland Security at some point before the individual hearing, and the removal order that was thought to be just for Mirian and CMQA also included Juan. Therefore, undersigned counsel voluntarily withdrew the prior habeas petition and filed a Motion to Reopen Proceedings for ineffective assistance of counsel. That motion, initially improperly rejected for lack of immigration court jurisdiction, is currently being reconsidered on a Motion to Reconsider.

18. On August 25, 2025, ICE demanded that Juan report to ISAP in Framingham on the same day because they had been informed that the Habeas petition had been dismissed. Juan asked for time to talk to his attorney and prepare transportation, and in response ICE demanded that Miran also come with him the next day to the check in. The ICE officer informed undersigned counsel that they would be made to produce departure tickets to Ecuador to leave the weekend of August 29, 2025. Explicit guarantees were made multiple times to counsel by the ICE officer over the phone on August 25, 2025, that neither Mirian nor Juan would be detained upon checking in, but would instead be given a departure plan.

19. On August 26, 2025, the undersigned counsel's office accompanied Mirian and Juan to ISAP in Framingham. It was there that they were told to purchase tickets to depart and were set on a weekly check-in schedule.

20. After departing the ISAP office, undersigned counsel received a call from an ICE officer asking if Mirian and Juan were on their way to the Enforcement Removal Operations (ERO) office in Burlington, MA. Counsel stated she was not aware of such a request but would ask them to turn around to report there.

21. Upon reporting at the Burlington, MA ERO office, Mirian was detained by ICE. The reason given for detention: that she "has a warrant and a final removal."

22. Mirian was unlawfully detained by ERO/ICE from August 26, 2025, until her release was ordered on November 6, 2025, by Judge O'Toole in No. 25-12365 (D. MASS. 2025).

23. On November 18, 2025, during Juan's weekly ICE check in, he was handed a handwritten sticky note demanding that they depart the United States no later than December 2, 2025 and present their departure tickets to ICE at their weekly check in on November 25, 2025. ICE threatened the family unit with detention if they failed to comply—including the detention of their 7-year-old daughter. That action violates 8 C.F.R. § 241.4 (custody review), 8 C.F.R. § 241.5 (supervision order requirements), Fifth Amendment procedural due process, and APA requirements for reasoned agency decision-making. ICE cannot lawfully enforce immigration orders by informal threat notes.

24. On November 20, 2025, Petitioners filed an Emergency Stay of Removal while the BIA adjudicates the pending appeal of their Motion to Reopen. The BIA has not ruled on this motion as of December 1, 2025, because ICE/ERO has not confirmed that the Petitioners are scheduled to leave on December 2, 2025. This Court in *Devitri v. Cronen*, 289 F. SUPP. 3d at 289–90, 296–97, condemned ICE's attempts to remove individuals while legal remedies were actively pending, holding that this constitutes interference with judicial review. ICE is repeating exactly that behavior here.

25. ICE has not performed the required "Deconfliction" for T-Visa Applicants. ICE policies require notification to specialized supervisors, consultation with any investigating agencies, review of potential interference with trafficking investigations, and a written determination prior to any enforcement action. ICE has done none of these steps, and has already

previously detained Mirian for many weeks without taking such steps. Removing Petitioners now violates the core purpose of the TVPA and is *ultra vires*.

26. ICE's pattern of targeting the family unit demonstrates bad faith. ICE's actions fit a pattern that courts in this district have repeatedly stopped: retaliation after they succeeded in their prior release in federal court on November 6, coordinated targeting of the entire family, threatening family deportation, using check-ins to coerce actions, attempting removal during pending litigation, misleading representations regarding removal procedures, issuing non-regulatory "orders" to enforce departure, and refusing to provide formal notice or documentation. This is exactly the kind of conduct that this Court condemned in *Devitri v. Cronen*, 289 F. SUPP. 3d 287 (D. MASS. 2018), *Jiminez V. Nielson*, 334 F. SUPP. 3d 370 (D. MASS. 2018), and *Savino v. Souza*, 459 F. Supp 3d 317 (D. MASS 2020).

27. Petitioner's situation is factually more extreme than several of these cases. The facts of this case are more extreme—and accordingly more compelling—than those presented in the four major decisions where this Court intervened to stop ICE misconduct. In each of those cases, the Court addressed a *subset* of the abuses occurring here. Taken together, Petitioners' circumstances exceed the constitutional, statutory, and equitable concerns present in Devitri, Jiminez, and Savino, in multiple independently sufficient ways. In *Devitri*, D. Mass. intervened because ICE attempted to remove individuals while motions to reopen and stay requests were *pending*. The Court found that such removal would interfere with access to judicial review and constituted bad faith. Here, the interference is more severe because the petitioner's have a pending BIA emergency stay and direct appeal of their *Matter of Lozada* Motion to Reopen, ICE is attempting to remove before the BIA can rule, Petitioners are victims of severe labor trafficking, a statutorily protected group under the TVPA, and ICE

has ignored mandatory deconfliction procedures, which did not exist in Devitri and make removal here squarely illegal. Thus, the constitutional concerns in Devitri are present and amplified by the additional statutory protections triggered by the Petitioners' T-Visa application and ICE's heightened duties toward trafficking victims.

28. *Savino* was concerned about abusive detention conditions and ICE's failure to implement lawful procedures. D. Mass. intervened due to systemic misconduct and unconstitutional confinement practices. Here, the misconduct is broader and more direct: Petitioners already endured abusive detention, which Judge O'Toole found unlawful; ICE has now escalated to threatening "family detention" as punishment for not self-deporting; the removal directive is not merely unlawful—it is a handwritten sticky note, utterly devoid of due process; and the misconduct targets an entire family unit, including a 7-year-old child, which raises even greater constitutional concerns. ICE's conduct here is not only procedurally defective but affirmatively coercive, and it threatens to replicate or exceed the very abuses condemned in *Savino*.

## CLAIMS FOR RELIEF

### COUNT ONE
### Fifth Amendment Procedural Due Process

29. The Petitioners reallege and incorporate by reference the allegations contained in paragraphs 1 through 30 of this petition.

30. Petitioners have been subjected to the most profound procedural deprivation imaginable: a coerced removal directive handwritten on a sticky note, accompanied by threats of family detention, despite (1) a pending T-Nonimmigrant application under the TVPA, (2) a pending BIA emergency stay motion, and (3) the complete absence of any formal ICE notice or process.

31. Under *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), due process requires evaluating private interest, risk of erroneous deprivation, and governmental interest. Here, the scales weigh firmly in favor of Petitioners.

    a. Private Interest: petitioners face imminent removal, family separation or detention, loss of protection under the TVPA, forfeiture of a pending T Visa, obstruction of the pending BIA stay motion, and risk of additional harm from traffickers. This private interest is extraordinarily high, surpassing those recognized in *Devitri* and *Jiminez*.

    b. Risk of Erroneous Deprivation: Risks here are maximized toward the Petitioners because ICE has issued no formal order, only a sticky note; no custody review has occurred under 8 C.F.R. § 241.4; there is no lawful Order of Supervision under 8 C.F.R. § 241.5; there is an active BIA stay pending; and the mandatory TVPA deconfliction was ignored. The procedural defects here exceed the irregularities identified in *Devitri*.

    c. Governmental Interest: The government's interest here weighs against removal. Under the TVPA, Congress expressly mandated protection—not removal—of trafficking victims. The government has a statutory interest in ensuring Petitioners remain available for cooperation and protected from retaliation. ICE's unilateral sticky-note expulsion directly contradicts that interest.

32. Therefore, should these actions be allowed to continue, due process for the Petitioners will continue to be violated.

## COUNT TWO
### Substantive Due Process

33. The Petitioners reallege and incorporate by reference the allegations contained in

11

paragraphs 1 through 32 of this petition.

34. Civil immigration enforcement cannot be punitive. *Bell v. Wolfish*, 441 U.S. 520, 535-39 (1979).

35. Here, ICE's conduct is plainly retaliatory and punitive: Mirian was detained in squalid conditions and released only after Judge O'Toole's intervention on November 6, 2025, within days, ICE escalated against the entire family, ICE issued a coercive "self-deport" order under threat of family detention, ICE's actions were all coordinated across the family unit which is classic retaliatory targeting, and no legal process accompanied ICE's actions.

36. This court has repeatedly condemned these forms of bad faith in *Savino, Devitri*, and *Jimenez*.

37. Here, the forbidden purpose of punishment—not lawful enforcement—is unmistakable. Such intimidation and retaliation violate substantive due process and exceed ICE's lawful authority.

## COUNT THREE
## APA Violation — Arbitrary and Capricious Agency Action

38. The Petitioners reallege and incorporate by reference the allegations contained in paragraphs 1 through 37 of this petition.

39. The Respondents' intention to force the Petitioners to depart is arbitrary because it lacks reasoned decision-making, ignores mandatory T-Visa procedures, contradicts ICE victim-protection policies, provides no explanation, record, or review, and is based on a non-existent form of notice (a handwritten sticky note).

40. Under the APA, agency action must be set aside when it is not the product of reasoned

decision-making. A handwritten sticky note threatening family detention cannot possibly satisfy this standard.

## COUNT FOUR
### Ultra Vires Agency Action

41. The Petitioners reallege and incorporate by reference the allegations contained in paragraphs 1 through 40 of this Petition.

42. Respondents acted beyond statutory authority by ordering removal by a sticky note, threatening family detention without legal cause, ignoring statutory TVPA protections, and attempting removal during pending BIA adjudication.

43. Courts in this district have repeatedly held that ICE exceeds statutory authority when it interferes with judicial review, bypasses procedures, or engages in patterns of misconduct. *See Jiminez, Devitri,* and *Savino.*

44. Here, ICE's use of a handwritten, non-regulatory directive and threats of family detention represents the purest form of ultra vires behavior—action taken entirely outside any statutory or regulatory framework.

## COUNT FIVE
### Unlawful Custody & Restraint (28 U.S.C. § 2241)

45. The Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1 through 44 of this Petition.

46. Under *Jones v. Cunningham*, 371 U.S. 236, 238-43 (1963), restraints such as GPS monitoring, coercive check-ins, and detention threats constitute custody.

47. Under *Bell v. Wolfish*, civil detention cannot be punitive.

48. Here, ICE's threats and pattern of retaliation amount to punitive civil enforcement, which is unconstitutional.

49. Both adults are subject to GPS shackles, ICE is threatening immediate re-detention if they do not self-deport, ICE is coercively controlling their movements, documents, and departure, the family has been ordered to present tickets and board a plane under threat of punishment, and Respondents have entirely commandeered their liberty.

50. The custody here is more severe than many habeas cases where courts have found jurisdiction, because ICE is not merely restraining Petitioners—ICE is weaponizing that restraint to force an illegal removal.

51. This level of coercion satisfies the habeas custody standard and warrants immediate judicial intervention.

## COUNT SIX
### Statutory Violation — Trafficking Victims Protection Act

52. The Petitioners reallege and incorporate by reference the allegations contained in paragraphs 1 through 51 of this Petition.

53. Removing Petitioners before adjudication of their T-Visa and before deconfliction contradicts the TVPA's purpose and structure, undermines law-enforcement cooperation and investigation, illegally exposes victims to danger, and nullifies Congress's trafficking protections.

54. Congress designed the T-Visa and the TVPA to: protect victims of severe trafficking, ensure they can safely assist investigations, prevent traffickers from benefiting from victims' removal, and remove disincentives to reporting abuse.

55. ICE's removal directive violates the TVPA because ICE has performed no deconfliction (a mandatory step under its own binding policies), removal would extinguish Petitioner's ability to pursue their already-pending T-Visa, removal would

endanger them and undermine the statutory scheme, and Congress expressed a strong interest in *preventing* premature removal of trafficking victims.

56. No court in this district has allowed ICE to remove a trafficking victim without compliance with mandatory victim-protection protocols. ICE's conduct here directly frustrates Congress's purpose.

## PRAYER FOR RELIEF

Wherefore, Petitioner respectfully requests this Court to grant the following:

(1) Assume jurisdiction over this matter;

(2) Issue a writ of habeas corpus releasing Petitioners from unlawful restraints on liberty.

(3) Stay removal pending resolution of this action and the BIA appeal.

(4) Enjoin ICE from detaining, transferring, or removing Petitioners.

(5) Require ICE to withdraw the unlawful handwritten order.

(6) Require ICE to complete deconfliction before any future enforcement.

(7) Grant any further relief this Court deems just and proper.

## CONCLUSION

Petitioners stand at the edge of an unlawful, irreversible removal—ordered not through law, regulation, or process, but through a handwritten sticky note threatening family detention. This is not immigration enforcement. It is coercion. It is retaliation. It is the abandonment of every rule that distinguishes the exercise of federal authority from raw power.

The Constitution does not tolerate such conduct. The APA does not tolerate such conduct. The TVPA does not tolerate such conduct. And this Court—repeatedly, and in no uncertain

terms—has refused to tolerate such conduct in *Devitri, Jimenez,* and *Savino*. However, this case is more urgent, more egregious, and more lawless than those that have come before it.

Here, ICE seeks to preempt the BIA's ability to rule. Here, ICE seeks to nullify Congress's trafficking protections. Here, ICE seeks to retaliate against an entire family for asserting their rights. And here, ICE seeks to do so in a manner wholly untethered from any statutory or regulatory authority.

Federal courts exist for precisely these moments—when an agency abandons law and procedure; when vulnerable people face irreparable harm; when the Constitution itself is at stake.

Petitioners respectfully ask this Court to grant the writ, stay removal, enjoin all coercive actions, and restore the rule of law before December 2, 2025, bringing an outcome from which there can be no return.

> Respectfully Submitted,
> Juan David Quichimbo Sumba,
> Mirian Ximena Abarca Tixe, and
> Camila Margaritha Quichimbo Abarca,
> By Their Attorney,
>
> //s// Elizabeth Shaw
> _____
> Elizabeth Shaw, Esq. | BBO #: 713541
> Law Offices of Rachel L. Rado, LLC
> 175 Portland Street, 2nd Floor.
> Boston, MA 02114
> (t) 617-871-6030 | (f) 877-246-8795
> (e) eshaw@rachelradolaw.com

Date: 12/01/2025

## VERIFICATION PURSUANT TO 28 U.S.C. § 2242

  I represent Petitioners, Juan David Quichimbo Sumba, Mirian Ximena Abarca Tixe, and CMQA, and submit this verification on her behalf. I hereby verify that the factual statements made in the foregoing Petition for Writ of Habeas Corpus are true and correct to the best of my knowledge.

//s// Elizabeth Shaw
_____
Elizabeth Shaw, Esq. | BBO #: 713541
Law Offices of Rachel L. Rado, LLC
175 Portland Street, 2nd Floor.
Boston, MA 02114
(t) 617-871-6030 | (f) 877-246-8795
(e) eshaw@rachelradolaw.com


Date: 12/01/2025


## CERTIFICATE OF SERVICE

I, Elizabeth Shaw, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

                //s// Elizabeth Shaw
                _____
                Elizabeth Shaw, Esq. | BBO #: 713541
                Law Offices of Rachel L. Rado, LLC
                175 Portland Street, 2nd Floor.
                Boston, MA 02114
                (t) 617-871-6030 | (f) 877-246-8795
Date: 12/01/2025          (e) eshaw@rachelradolaw.com