UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

JUAN DAVID QUICHIMBO SUMBA et al,

Petitioner,

v.

KRISTI NOEM, U.S. Secretary of Homeland Security;

Respondent,

Civil Action No.1:25-cv-13625-GAO

**RESPONDENTS' OPPOSITION TO PETITIONERS' AMENDED PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C § 2241**

Respondents by and through their attorney, Leah B. Foley, United States Attorney for the District of Massachusetts, submit this Opposition to the Amended Petition for Writ of Habeas Corpus filed by Petitioners, a family of Ecuadorian nationals all subject to final orders of removal from the United States. Doc. No. 7.

**INTRODUCTION**

This Court cannot extend the writ of habeas corpus unless Petitioners demonstrates they are "is in custody in violation of the Constitution or laws or treaties of the United States". 28 U.S.C. § 2241(c)(3). Petitioners fail to meet this burden.

Petitioners, subject to final orders of removal since 2023, remained in the United States in defiance of their removal orders before U.S. Immigration and Customs Enforcement ("ICE"), in June of 2025, directed them to depart the United States on their own volition. *See* Declaration of Assistant Field Office Director Mark J. Anzelmo, attached as Exhibit A, ¶ 18. Petitioners ignored such directive. *Id.*, ¶ 19. ICE again recently provided Petitioners with an opportunity to depart the United States on their own accord. *Id.*, ¶ 21. However, they again disregarded such command

and instead filed a habeas petition with this Court (Doc. No. 1), asking the Court to find their custody[1] unlawful and issue an order staying their removal. *Id.*

Petitioners' request for relief must be denied. ICE's intended effectuation of their final orders of removal is authorized pursuant to 8 U.S.C. § 1231(a)(6). *See Thai v. Hyde*, 788 F. Supp. 3d 57, 61 (D. Mass. 2025) (Section 1231(a)(6) allows for detention beyond the removal period for those who are "present in the United States without being admitted or paroled."). Petitioners' pending Form I-914, Application for T Nonimmigrant Status ("T-visa application") does not prevent their arrest, detention, or removal—indeed, the applicable statue merely provides that ICE "may" grant a stay of removal if the alien "sets forth a prima facie case for approval" of the T-visa application. 8 U.S.C. § 1227(d)(1). Further, the applicable regulation specifically states that the filing of a T-visa application "has no effect on DHS authority or discretion to execute a final order of removal". 8 C.F.R. § 214.204(b)(2)(i).

Petitioners' claim that ICE's intended removal, and their detention for such purpose, violates the Fifth Amendment's Due Process Clause is also without merit. As recognized by the Supreme Court, "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process." *Demore v. Kim*, 538 U.S. 510, 523 (2003). The First Circuit has acknowledged as much as well. *See Hernandez-Lara v. Lyons*, 10 F.4th 19, 41 (1st Cir. 2021) (Explaining that the "prompt execution of removal orders is a legitimate governmental interest which detention may facilitate."); *Aguilar v. U.S. Immigr. & Customs Enf't Div. of Dep't of Homeland Sec.*, 510 F.3d 1, 22 (1st Cir. 2007) (Recognizing the government's "legitimate interest in effectuating detentions pending the removal of persons illegally in the country.")

---

[1] Petitioner Sumba was arrested by ICE on December 9, 2025 pursuant to 8 U.S.C. § 1231(a)(6). Petitioner Tixe and the minor-Petitioner are not detained.

Petitioners' claim of lack of "process" prior to removal is belied by the ample administrative process they received to this juncture where they had full opportunity to seek relief from removal. *See A. A. R. P. v. Trump*, 605 U.S. 91, 94 (2025) (Explaining that to satisfy procedural due process, "no person shall be removed from the United States without opportunity, at some time, to be heard.") (internal quotation marks omitted).

Specifically, Petitioners were ordered removed after a full hearing in Immigration Court and after the Board of Immigration Appeals ("BIA") dismissed their appeal. Exh. A, ¶¶ 15-17. While Petitioners could have appealed their 2023 removal order to the circuit court, they did not do so. Petitioners have also filed multiple motions to reopen and motions to reconsider with the Immigration Court that ordered their removal. *Id.*, ¶ 20. After an Immigration Judge ("IJ") denied their motion to reopen, they filed an appeal and a motion to stay removal with the BIA both of which remain pending. *Id.*

This Court, however, lacks jurisdiction to review Petitioners' removal order or the process they received to this point. *Gicharu v. Carr*, 983 F.3d 13, 16-20 (1st Cir. 2020) (Explaining that district courts lack jurisdiction over claims that can be raised administratively). As explained by another session of this Court: "Put simply, there is a procedure to address such claims, and that procedure does not involve this Court. The Court is unwilling to ignore or defy the law, even in highly sympathetic circumstances. To do so would be a fundamental violation of its most basic responsibilities." *Doe v. Smith,* No. CV 18-11363-FDS, 2018 WL 4696748, at *3 (D. Mass. Oct. 1, 2018).

This Court also lacks jurisdiction to issue a stay of removal while their BIA appeal is pending and while they pursue the T-visa application per 8 U.S.C. § 1252(g) which bars district court review of any "decision or action by [ICE] to … execute removal orders." *Compere v.*

*Riordan,* 368 F. Supp. 3d 164, 171 (D. Mass. 2019) (Explaining that because petitioner is "subject to a final order of removal and he seeks to enjoin ICE from enforcing that order … [h]is claim for injunctive relief falls, therefore, directly within the jurisdictional bar set by Congress."). ICE's intended removal of Petitioners comports with statute, regulation, and the Constitution and therefore this Court must deny this Petition.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. Petitioners' Immigration History.

Petitioners entered the United States without inspection and were apprehended by U.S. Customs and Border Protection ("CBP") on or about June 28, 2021. Exh. A, ¶ 6. On October 14, 2022, Petitioners were ordered removed from the United States after the IJ denied their applications for relief from removal. *Id.*, ¶ 15. On October 6, 2023, the BIA dismissed Petitioners' appeal, finding that it was filed untimely. *Id.*, ¶ 17.

On or about June 10, 2025, ICE Boston issued a departure plan for Petitioners by instructing them to bring proof of a purchased departure itinerary no later than June 19, 2025, showing a departure date of no later than July 3, 2025. *Id.*, ¶ 18. Petitioners failed to comply with ICE's instruction and did not present an itinerary as required. *Id.*, ¶ 19. Instead, Petitioners filed a motion to reopen with the Immigration Court in New York—this motion was denied. *Id.*, ¶ 20. Petitioners filed an appeal of the motion to reopen to the BIA. *Id.* Such appeal remains pending. *Id.* Petitioners filed a motion to stay removal with the BIA which also remains pending. *Id.* Petitioner Sumba was arrested by ICE on December 9, 2025. *Id.*, ¶ 22. ICE intends to enforce Petitioners' final orders of removal in the near future. *Id.*, ¶ 24. ICE has no record of Petitioners filing a Form I-246, Application for a Stay of Deportation or Removal with ICE. *Id.*, ¶ 25.

### B. Procedural History.

1. **Petitioners' initial habeas petition filed in response to directive to depart the United States.**

On June 11, 2025, Petitioners filed a habeas petition in this Court that attempted to preemptively challenge their arrest, detention, and removal by ICE. *Sumba v. Hyde*, 25-cv-11713-GAO. After the government responded to their Petition, they filed a notice of voluntary dismissal on July 24, 2025.

2. **Petitioner Tixe's subsequent petition filed in response to ICE's arrest, detention, and intended effectuation of her removal order.**

Petitioner Tixe filed an individual habeas petition on August 26, 2025. *Abarca Tixe v. Hyde et al.*, 1:25-cv-12365-GAO (D. Mass. 2025). In response, Judge Sorokin entered an order that Petitioner Tixe "not be deported, removed, or otherwise transferred outside the United States until further Order of this Court." *Abarca Tixe,* Doc. No. 4. Respondents responded to Petitioner Tixe's petition on September 9, 2025. *Abarca Tixe,* Doc. No. 9. After ICE transferred Petitioner Tixe to a facility in Texas, this Court ordered ICE to transfer her to a facility within the District of Massachusetts, and denied Respondents' motion to modify such order which was filed as ICE lacked a female detention facility suitable for Petitioner Tixe in Massachusetts. *Abarca Tixe*, Docs. No. 20, 23. The Court granted Petitioner Tixe's petition "insofar as it challenges the conditions of petitioner's detention at the Burlington, Massachusetts, facility." *Abarca Tixe*, Doc. No. 35. The Court acknowledged that "[o]ther conditions of custody are not within this Court's jurisdiction." *Id.*

3. **Petitioners' recent petition filed to prevent effectuation of their removal orders.**

On December 1, 2025, Petitioners—Mr. Sumba, Ms. Tixe, and their minor child—filed another Petition with this Court. Doc. No. 1. The Petition was filed in response to ICE's directive that Petitioners depart the United States pursuant to their final orders of removal. *Id.* at 1. On

December 9, 2025, Petitioners filed an Amended Petition after Petitioner Sumba was arrested and detained by ICE. Doc. No. 7. They claim that ICE's intended effectuation of their final orders of removal violates statute and regulation, the Constitution, and unnamed DHS/ICE policies. *Id.* at 1. Petitioners ask this Court to "[s]tay removal pending resolution of this action and the BIA appeal" of the IJ's denial of the motion to reopen. *Id.*, PRAYER FOR RELIEF. They also ask this Court to "[e]njoin ICE from detaining, transferring, or removing Petitioners" and request the Court order ICE to withdraw its directive to Petitioners to depart the United States. *Id.*

## STATUTORY AND REGULATORY PROVISIONS AT ISSUE

Congress has provided a statutory process to allow aliens to file immigration applications for relief from removal in immigration courts and then seek review of such decisions before the BIA, subject to judicial review by courts of appeals. An alien may seek relief from removal in the immigration court and if ordered removed, may generally appeal an IJ's removal order to the BIA. *See* 8 C.F.R. § 1003.1(b). An order of removal issued by an IJ becomes a final order of removal upon dismissal of an appeal by the BIA. 8 C.F.R. § 1241.1(a).

An alien has further administrative avenues for review and to challenge removal orders—including motions to reopen and motions to reconsider. *See generally* 8 U.S.C. § 1229a(c)(6)-(7); 8 C.F.R. §§ 1003.2, 1003.23. A motion to reopen seeks to reopen proceedings so that new evidence can be presented at an evidentiary hearing and for a new decision to be entered on a different factual record. *See Matter of L-O-G-,* 21 I. & N. Dec. 413, 418–19 (BIA 1996) (en banc). A motion to reconsider asks the adjudicator to reexamine the original decision considering legal arguments that could not have been raised earlier, a change of law, or an argument or aspect of the case that was overlooked. *See Matter of O-S-G-*, 24 I. & N. Dec. 56, 56–57 (BIA 2006).

By statute, an alien may file one motion to reopen no later than ninety days after the IJ or BIA enters its decision. *See* 8 U.S.C. § 1229a(c)(7); 8 C.F.R. §§ 1003.2(c)(2), 1003.23(b)(1), (3). The filing of a motion to reopen generally does not stay execution of the underlying decision (the final removal order), but an alien can separately seek a stay of a final removal order from the IJ or BIA. *See* 8 C.F.R. §§ 1003.2(f), 1003.23(b)(1)(v); Immigration Court Practice Manual, https://www.justice.gov/eoir/reference-materials/ic/chapter-8/3 (last accessed Dec. 11, 2025); BIA Practice Manual, https://prod.justice.gov/eoir/reference-materials/bia/chapter-6/3 (last accessed Dec. 11, 2025).[2] An alien can also seek a stay of removal from ICE by submitting a Form I-246, Application for a Stay of Deportation or Removal.

An alien can also seek judicial review of certain decisions appealed from the BIA. *See* 8 U.S.C. § 1252(a)(1) (courts of appeals have jurisdiction to review "final order[s] of removal"). Under 8 U.S.C. § 1252(b)(9), "[j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States . . . shall be available only in judicial review of a final order" of removal in a PFR. On a PFR, the courts of appeals may consider both the finding of removability and the denial of any motion. *See Reyes v. Garland*, 37 F.4th 1, 3 (1st Cir. 2022).

The statutory scheme restricts the availability and scope of judicial review of removal orders by expressly precluding habeas corpus jurisdiction and channeling review of such orders to the courts of appeals as "the sole and exclusive means for judicial review of an order of removal." 8 U.S.C. § 1252(a)(5). The statute provides that review of all questions "of law and fact … arising

---

[2] The BIA consider stay requests on an emergency basis if an alien is in "DHS's physical custody and removal, deportation, or exclusion is imminent". *Id.*

from any action taken or proceeding brought to remove an alien" shall be available only through a PFR in the appropriate court of appeals. *Id.* § 1252(b)(9).

## STANDARD OF REVIEW

It is axiomatic that "[t]he district courts of the United States . . . are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute." *Exxon Mobil Corp. v. Allopath Servs., Inc.*, 545 U.S. 546, 552 (2005) (internal quotations omitted). Title 28 U.S.C. § 2241 provides district courts with jurisdiction to hear federal habeas petitions unless Congress had separately stripped the court of jurisdiction to hear the claim. The burden is on the petitioner to prove that his custody is in violation of the Constitution, laws, or treaties of the United States. *See* 28 U.S.C. § 2241(c)(3); *Espinoza v. Sabol*, 558 F.3d 83, 89 (1st Cir. 2009).

## ARGUMENT

ICE's intended removal of Petitioners, and their custody for purpose of removal, is authorized by statute and does not offend regulation or the Constitution. Additionally, this Court lacks jurisdiction to interfere with ICE's effectuation of Petitioners' removal orders even with a T visa application pending adjudication and with an appeal of a denied motion to reopen pending with the BIA. As such, this Court must deny the Petition.

### A. ICE's Intended Removal of Petitioners is Authorized by Statute.

ICE's statutory authority to arrest, detain, and remove Petitioners stems from 8 U.S.C. § 1231(a) which provides for the detention and removal of aliens with final orders of removal. *See Nken v. Holder*, 556 U.S. 418, 441 (2009) (Explaining that upon the BIA's affirmance of an IJ's order of removal, "the Executive Branch became legally entitled to remove him from the United States."). By statute, ICE is directed to detain and remove aliens within 90 days of accrual of a final order of removal. *See* 8 U.S.C. § 1231(a)(2). Because Petitioners' orders of removal were

final in 2023, Petitioners are outside of the 90-day removal period during which ICE "shall detain" for purpose of removal. 8 U.S.C. § 1231(a)(2).

ICE, however, maintains statutory authority to arrest, detain, and remove an alien with a final order of removal beyond the removal period, and does not need to demonstrate that such individual presents a flight risk or danger to the community prior to exercising such authority. Indeed, 8 U.S.C. § 1231(a)(6) allows ICE to arrest and detain an alien with a removal order beyond the removal period if the individual is inadmissible under 8 U.S.C. § 1182, removable under § 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4), or has been determined to be a risk to the community or unlikely to comply with the order of removal. 8 U.S.C. § 1231(a)(6).

As such, ICE had the authority to arrest and detain Petitioner Sumba, and the authority to direct Petitioners to depart the United States, as they are inadmissible to the United States under 8 U.S.C. § 1182(a)(6)(A)(i) as they were neither admitted nor paroled in the United States upon entry, as Petitioners acknowledge. *See Thain,* 788 F. Supp. 3d at 612; *Quezada-Martinez v. Moniz*, 722 F. Supp. 3d 7, 11 (D. Mass. 2024) (Agreeing that petitioner's "detention is authorized by § 1231(a)(6)" as such "finding comports with the text of the statute as well as with recent Supreme Court precedent."); *Rodriguez-Guardado v. Smith*, 271 F. Supp. 3d 331, 335 (D. Mass. 2017) (Finding ICE "has statutory authority" under Section 1231(a)(6) to arrest and detain an inadmissible alien beyond the removal period.).[3]

Additionally, as it concerns Petitioner's removal with a T-visa application pending, the applicable statue merely provides that ICE "may" grant a stay of removal if the alien "sets forth a

---

[3] Further, Petitioner Sumba, now in ICE custody, is not entitled to a bond hearing or release as Section 1231(a)(6) does not contemplate such process. *See Johnson v. Arteaga-Martinez*, 596 U.S. 573, 574 (2022).

9

prima facie case for approval" of the T-visa application. 8 U.S.C. § 1227(d)(1). Here, Petitioner Sumba has not received a prima facie determination from USCIS and therefore ICE is not required to consider granting a stay of removal to Petitioners. Petitioners' claim, unsupported by any citation to statute, that ICE's removal of Petitioners before their T-visa is adjudicated violates the Trafficking Victims Protection Act, is baseless.

Petitioners' APA claim also fails as ICE enjoys statutory authority to arrest, detain, and effectuate removal orders under 8 U.S.C. § 1231 and the APA does not allow for challenges to actions committed to an agency's discretion which includes the discretionary decision to detain an individual and effectuate a removal order under Section 1231(a)(6). *See* 5 U.S.C. § 701(a)(2). As explained by another district court denying a similarly raised APA claim: "Petitioner has not shown that his detention is improper or illegal, or that he is entitled under relevant law and regulations to have his T visa application adjudicated by the agency prior to his removal. Thus, he has not shown that the agency's conduct in his case has been arbitrary and capricious". *Tenelema v. Freden*, No. 1:25-CV-0902-MAV, 2025 WL 3514099, at *6 (W.D.N.Y. Dec. 8, 2025). For these reasons, Petitioners' assertion that ICE's intended effectuation of their final orders of removal is *ultra vires* and unsupported by statute fails.[4]

**B.     ICE's Intended Removal of Petitioners does not Violate Regulation.**

Petitioners' claim that ICE's intended removal is unlawful based on Petitioner Sumba's pending T-via application is without merit as they have no right to a stay of removal under regulation. 8 C.F.R. § 214.204(b)(2)(i) is clear that "[t]he filing of an Application for T

---

[4] Petitioners' claim in their Amended Petition that ICE has violated "binding policies" in directing Petitioners to depart the United States is unsupported by reference to any ICE applicable policy.

10

Nonimmigrant Status has no effect on DHS authority or discretion to execute a final order of removal…."). *See Nicholas L. L. v. Barr*, No. 19-cv-02543-ECT-TNL, 2019 WL 4929795, at *5 (D. Minn. Oct. 7, 2019) (Explaining that "Federal regulations say the opposite" as to a claim that "a T-visa applicant cannot be removed before a bona fide determination has been made concerning his application."); *Tenelema*, 2025 WL 3514099 at *5 (Recognizing that the "regulations specifically contemplate the situation of T visa applicants with final orders of removal, and provides that the filing of a T visa application has no effect on the government's authority to execute a final order of removal.").

Instead, by regulation, a stay of removal is automatically granted only once USCIS determines that T-visa application is bona fide. 8 C.F.R. § 214.204(b)(2)(iii). Petitioners make no claim that USCIS has made a bona fide determination of the T-visa application and any contention that the mere filing of an application forestalls arrest, detention, and removal runs directly contrary to the governing regulations. 8 C.F.R. § 241.204(b)(2). As such, Petitioners' claim that their removal violates regulation fails and does not support habeas relief.

C. **ICE's Effectuation of Petitioners' Removal Orders is Constitutional.**

Petitioners' claim that ICE's intended effectuation of their removal orders violates the Fifth Amendment's Due Process Clause is meritless as ICE has full statutory and regulatory authority to enforce their removal orders and custody and detention is a permissible aspect of the deportation process.

Petitioners' substantive due process claim fails as ICE's directives to Petitioners to depart the United States, and ICE's recent detention of Petitioner Sumba, is to facilitate the effectuation of their final orders of removal and not for constitutionally illegitimate purposes. As recognized by the Supreme Court, "detention during deportation proceedings [is] a constitutionally valid

aspect of the deportation process." *Demore*, 538 U.S. at 523. As the Supreme Court has explained, immigration detention is constitutional so long as it serves "its purported immigration purpose." *Id.* at 527-28. Here, the purpose of Petitioner Sumba's detention is to effectuate his removal order as he chose not to depart the United States as ordered by an IJ (and affirmed by the BIA) in 2023 and also ignored ICE's repeated directives to depart on his own volition.

The First Circuit has also recognized that the "prompt execution of removal orders is a legitimate governmental interest which detention may facilitate." *Hernandez-Lara*, 10 F.4th at 41. *See also Aguilar*, 510 F.3d at 22 (Recognizing the government's "legitimate interest in effectuating detentions pending the removal of persons illegally in the country.") This Court has acknowledged as much as well. *See e.g., Thai*, 788 F. Supp. 3d at 61 (Recognizing that "[s]ome period of detention prior to deportation is constitutionally valid"); *Benito Vasquez v. Moniz*, 788 F. Supp. 3d 177, 182 (D. Mass. 2025) (Declining to find substantive due process violation as ICE's detention served "reasonable purpose" – namely to ensure petitioner was "present for ICE to affect his removal."). Similarly, ICE's directive to Petitioner Tixe and her child to depart the United States does not violate substantive due process rights as again, effecting removal orders is plainly constitutional.

The Supreme Court set forth a framework for analyzing the Constitutionality of post-final order detention under Section 1231(a)(6) in *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001). In *Zadvydas*, the Supreme Court explained that the "reasonableness" of continued detention under Section 1231(a)(6) should be measured "primarily in terms of the statute's basic purpose, namely, assuring the alien's presence at the moment of removal." 533 U.S. at 700. The Court held that post-final order detention under Section 1231 is presumptively reasonable for six months. *Id*. at 701. Petitioner Sumba's Due Process challenge to his detention fails as he has been detained for

less than one week and the purpose of such detention is to assure his presence for removal. *See D'Ambrosio v. McDonald,* 793 F. Supp. 3d 271, 278 n.8 (D. Mass. 2025) (Explaining that "petitioner has been detained for less than six months, rendering his detention under § 1231 presumptively valid at this time."); *Thai*, 788 F. Supp. at 61 ("to the extent petitioner suggests that the duration of his detention violates his due process rights, such an argument is unavailing" as his detention for 17 days was "far short of the six-month period which is presumptively constitutional under *Zadvdyas*."); *Rodriguez-Guardado*, 271 F. Supp. 3d at 335 ("As petitioner has been detained for approximately two months as of this date, the length of his detention does not offend due process.").

Petitioners' procedural due process claim of lack of "process" prior to removal is belied by the ample administrative process they have received to this juncture in which they had full opportunity to seek relief from removal. *See A. A. R. P.*, 605 U.S. at 94 (Explaining that to satisfy procedural due process, "no person shall be removed from the United States without opportunity, at some time, to be heard.") (internal quotation marks omitted). *See also Tenelema*, 2025 WL 3514099 at *5-6 (Finding no due process violation with removal with pending T-visa as petitioner had "opportunity to be heard" prior to removal with filing of motion to reopen and ability to apply for administrative stay of removal from ICE.).

Petitioners were ordered removed after a full hearing in Immigration Court and after the BIA dismissed their appeal. While Petitioners could have appealed their 2023 removal order to the circuit court, they did not do so. Petitioners have also filed multiple motions to reopen and motions to reconsider with the Immigration Court that ordered their removal. After an IJ denied their motion to reopen, they filed an appeal and a motion to stay removal with the BIA both of which remain pending. This Court, however, lacks jurisdiction under the INA to review

Petitioners' removal order or the process they have received to this point.  8 U.S.C. § 1252; *Gicharur*, 983 F.3d at16-20 (Explaining that district courts lack jurisdiction over claims that can be raised administratively); *Aguilar*, 510 F.3d at 18 (Holding that "claims alleging violations of the right to procedural due process … arise from removal in that they are part of the fabric of the removal proceedings themselves" and therefore must be raised administratively and then to a circuit court).  For these reasons, Petitioners' due process claim challenge fails.

> D. **This Court Lacks Jurisdiction to Stay Petitioners' Removal from the United States.**

This Court is without jurisdiction to stay Petitioners' removals as 8 U.S.C. § 1252(g) precludes a district court from interfering with ICE's decision to effectuate removal orders.  Section 1252(g) states that "no court shall have jurisdiction to hear any cause or claim by ... any alien arising from the decision or action by [ICE] to ... *execute removal orders against any alien*." (emphasis added).  This provision applies "notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title." *Id.*

Section 1252(g) is "directed against a particular evil: attempts to impose judicial constraints upon [certain categories of] prosecutorial discretion." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 485 n.9 (1999).  As recently explained by another session of this Court, the jurisdictional bar applies if a petitioner were to "challenge their removability" and ICE's "discretionary decision[]" to execute a removal order. *D.V.D. v. U.S. Dep't of Homeland Sec.,* 778 F. Supp. 3d 355, 377 (D. Mass. 2025).  Here, Petitioners specifically challenge ICE's decision to remove them pending resolution of their BIA appeal and the T-visa adjudication.  As such, this Court lacks jurisdiction to interfere with ICE's discretionary decision to proceed with their removal.

Courts within this district, and around the country, routinely hold that they lack jurisdiction to enter an order staying removal based on section 1252(g)'s plain language, even if a motion to reopen a final order of removal is pending or the alien seeks to apply for a different form of relief from removal. For example, in *Compere*, the Court explained that it "simply lacks jurisdiction to grant a stay of a final order of removal" and that where "a petitioner may seek to reopen removal proceedings or [obtain] a stay of removal, he or she must do so through the procedure established by statute and regulation." 368 F. Supp. 3d at170. Otherwise, "it would be a dereliction of this Court's duty to enforce the law if it were to stay the removal" no matter "how sympathetic [his] situation may be or the risk of harm he faces if deported to Haiti." *Id.* at 171. *See also Gomes v. Smith*, 381 F. Supp. 3d 120, 22-23 (D. Mass. 2019) (Finding Court lacked jurisdiction to stay petitioner's removal while his motion to reopen was pending, but that petitioner instead "can seek a stay form the BIA and/or the First Circuit Court of Appeals.").

The Court reached a similar conclusion in *Doe* where it found itself without subject-matter jurisdiction to block ICE's effectuation of a removal order, explaining that questions as to whether petitioner "should be granted asylum in the United States; and whether her removal should be stayed pending those decisions" … "[b]y law are not to be resolved by a United States District Judge; they are to be resolved by immigration authorities (in this case, the BIA), subject to judicial review by the United States Court of Appeals." 2018 WL 4696748, at *3.

Other sessions from this Court routinely find jurisdiction lacking to enter stays of removal or otherwise interfere with ICE's execution of removal orders. *See e.g., Tejada v. Cabral,* 424 F. Supp. 2d 296, 298 (D. Mass. 2006) ("Congress made it quite clear that all court orders regarding alien removal—be they stays or permanent injunctions—were to be issued by the appropriate courts of appeals."); *Nelson v. Hodgson*, No. CIV.A. 14-10234-DJC, 2014 WL 2207621, at *2 (D.

Mass. May 27, 2014) (the "provisions of the REAL ID Act preclude this court from entering an order staying petitioner's removal."); *Aziz v. Chadbourne*, No. CIV.A.07-11806-GAO, 2007 WL 3024010, at *1 (D. Mass. Oct. 15, 2007) ("[a]ny stay of the final order of removal would squarely interfere with the execution of the removal order.").[5]

Petitioner notes that another session of this Court, in *Devitri v. Cronen*, 289 F. Supp. 3d 287, 294 (D. Mass. 2018), concluded that the application of Section 1252(g) to prevent the court from staying removal of an individual with a pending BIA motion to reopen violated the Suspension Clause. In that case, Judge Saris reasoned that because the petitioners were not detained, they would not have access to the BIA's emergency stay procedures, and therefore the motion to reopen process was not an adequate administrative alternative to habeas corpus relief. *Id.* This Court should decline to follow *Devitri* for multiple reasons.

First, Petitioner is detained, and therefore, the BIA's emergency stay procedure is applicable. *See* BIA Practice Manual, https://prod.justice.gov/eoir/reference-materials/bia/chapter-6/3 (last accessed Dec. 11, 2025).[6] *See Julce v. Smith*, No. CV 18-10163-FDS, 2018 WL 1083734, at *5 (D. Mass. Feb. 27, 2018) (Explaining that because petitioner was in custody, "he is free to file a motion to reopen and request an administrative stay from the BIA pending adjudication of such a motion … [t]herefore *Devitri* is inapposite, and the Court lacks

---

[5] Circuit courts of appeal are in accord. *See Camarena v. Dir., Immigr. & Customs Enf't*, 988 F.3d 1268, 1274 (11th Cir. 2021) ("[W]e do not have jurisdiction to consider 'any' cause or claim brought by an alien arising from the government's decision to execute a removal order. If we held otherwise, any petitioner could frame his or her claim as an attack on the government's *authority* to execute a removal order rather than its *execution* of a removal order."); *Tazu v. Att'y Gen. United States*, 975 F.3d 292, 297 (3d Cir. 2020) (Explaining that "the discretion to decide *whether* to execute a removal order includes the discretion to decide *when* to do it. Both are covered by the statute.").

[6] The BIA consider stay requests on an emergency basis if an alien is in "DHS's physical custody and removal, deportation, or exclusion is imminent". *Id.*

16

subject-matter jurisdiction to interfere in petitioner's removal."); *Gomes*, 381 F. Supp. 3d at 123 (Declining to apply *Devitri*'s reasoning since "in contrast to the petitioners in *Devitri*, who had yet to file their motions to reopen on the basis of asylum and were subject to removal prior to administrative adjudication, Gomes has an opportunity to raise his asylum claim through the administrative proceedings and can seek a stay from the BIA.").

Additionally, *Devitri's* Suspension Clause analysis is contrary to the Supreme Court's subsequent *Dep't of Homeland Sec. v. Thuraissigiam* decision where the Court held that the Suspension Clause was not implicated when a petitioner sought to remain in the United States because the writ of habeas corpus does not "permit a petitioner to claim the right to enter or remain in a country or to obtain administrative review potentially leading to that result." 591 U.S. 103, 117 (2020). *See also Rauda v. Jennings,* 55 F.4th 773, 777 (9th Cir. 2022) (Explaining that because the alien "seeks to remain in the United States, even if that requires staying in custody … [he] is not using habeas in anything like the traditional sense" and therefore 1252(g) does not violate the Suspension Clause); *Hamama v. Adducci,* 912 F.3d 869, 874 (6th Cir. 2018) (Section 1252(g) does not violate the Suspension Clause because petitioners "are not seeking habeas relief in the first instance" and because the "petition-for-review process provides an adequate alternative to an action in habeas").

As Section 1252(g) prohibits judicial review of "any cause or claim" that arises from the commencement of removal proceedings, this provision applies to constitutional as well as statutory claims. *Candra v. Cronen*, 361 F. Supp. 3d 148, 156 (D. Mass. 2019) (Explaining that a petitioner's "attempt to frame his claim in due process language does not change [the] result" that Section 1252(g) strips jurisdiction.); *Anderson v. Moniz*, No. CV 21-11584-FDS, 2022 WL 375231, at *4 (D. Mass. Feb. 7, 2022) ("Section 1252(g) can serve as a jurisdictional bar even

17

when a petitioner contends that his due-process rights were violated.").

That Petitioner is speciously alleging his arrest, detention, and removal is in retaliation for his exercise of the First Amendment does not remove his claim from Section 1252(g)'s reach. As the Supreme Court explained in *Reno* in finding that Section 1252(g) barred review of a First Amendment claim seeking to enjoin deportation proceedings, "an alien unlawfully in this country has no constitutional right to assert selective enforcement as a defense against his deportation." 525 U.S. at 487-88. The Court explained that allowing selective-enforcement lawsuits would "permit and prolong a continuing violation of United States law" and would leave [ICE] "hard pressed to enforce routine status requirements." *Id.* at 490. The Court further explained that "deportation is necessary in order to bring to an end *an ongoing violation* of United States law … [and] [t]he contention that a violation must be allowed to continue because it has been improperly selected is not powerfully appealing." *Id.* at 491 (emphasis in original).

Other courts have similarly determined that Section 1252(g) bars judicial review of ICE decisions to commence proceedings or execute removal orders, even in the face of First Amendment claims. *See e.g.*, *Zundel v. Gonzales*, 230 F. App'x 468, 475 (6th Cir. 2007) (Explaining that First Amendment challenge related to immigration enforcement action "is properly characterized as a challenge to a discretionary decision to 'commence proceedings' … [and] is insulated from judicial review"); *Humphries v. Various Fed. USINS Emps.*, 164 F.3d 936, 945 (5th Cir. 1999) (determining that § 1252(g) prohibited review of an alien's First Amendment claim based on decision to put him into exclusion proceedings); *Vargas v. United States Dep't of Homeland Sec.*, No. 1:17-CV-00356, 2017 WL 962420, at *3 (W.D. La. Mar. 10, 2017) (Claim that ICE "violated her First Amendment right to free speech by arresting her and initiating her removal after she made statements to the media … is barred by 8 U.S.C. § 1252(g)."); *Kumar v.*

*Holder*, No. 12-CV-5261 SJF, 2013 WL 6092707, at *6 (E.D.N.Y. Nov. 18, 2013) (Claim of initiation of proceedings in retaliatory manner "falls squarely within Section 1252(g)).

A pending application for a T-visa does not change the analysis; section 1252(g) still bars jurisdiction for this Court to order a stay as multiple courts have recently explained. *See e.g., Villatoro v. Noem,* No. 25-CV-05306 (OEM), 2025 WL 2880140, at *3 (E.D.N.Y. Oct. 9, 2025) (Section 1252(g) barred jurisdiction challenging ICE removal pending adjudication of T-visa as petitioner was "indirectly challenging his removal order"); *Westly v. Harper, et al.,* No. 25-cv-229-BWA, 2025 WL 592788 at *4 (E.D. La. Feb. 24, 2025) ("Clearly then, the key injunctive relief prayed for in the petition and motion – specifically, a stay of [p]etitioner's removal from the United States in general and an order staying her removal until her T-visa application is fully adjudicated – falls outside of this Court's jurisdiction."); *Suarez-Reyes v. Williams,* No. CV-20-01222-PMX-MTL-(JFM), 2020WL 3414781, at *2 (D. Ariz. June 22, 2020) (petitioner's claim that he will be deprived of an opportunity to have his T-visa applications heard at a meaningful time and manner if removed is insufficient to show his due process claim is not precluded by § 1252(g)); *Marcelo Rojas v. Moore,* No. 19-cv-20855, 2019 WL 3340630, at *1 (S.D. Fla. Mar. 26, 2019) (Court agreed that no T-visa applicant has a constitutionally protected liberty interest in remaining in the United States).

Petitioners have the means and ability to challenge their removal orders and seek a stay of removal from the appropriate administrative and judicial forums. Congress did not, however, provide authority to district courts to consider challenges to removal orders or stay requests, and in fact, specifically stripped district courts of the ability to interfere with ICE's execution of removal orders. As such, Petitioners' request for a stay of removal must be denied.

## CONCLUSION

For the above reasons, Petitioners' assertion of unlawful detention in violation of statute, regulation, and the Constitution fails as this Court lacks jurisdiction to stay removal or review Petitioners' removal orders. Additionally, ICE's intended effectuation of Petitioners' removal orders, final since 2023, is lawful. As such, this Court must deny their Amended Petition.

LEAH B. FOLEY
United States Attorney

Dated: December 16, 2025  By:  */s/ Mark Sauter*
Mark Sauter
Assistant United States Attorney
United States Attorney's Office
1 Courthouse Way, Suite 9200
Boston, MA 02210
Email: mark.sauter@usdoj.gov

## CERTIFICATE OF SERVICE

I, Mark Sauter, Assistant United States Attorney, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

Dated: December 16, 2025  By:  */s/ Mark Sauter*
Mark Sauter
Assistant United States Attorney